## SMITH v. PENNSYLVANIA COAL CO.

*(Supreme Court, General Term, Fifth Department. March, 1892.)*

1. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

In an action for personal injuries, it appeared that plaintiff, mate of a coal vessel' which was unloading at a wharf, was in the hold with the workmen, when orders were given preparatory to unloosing the vessel from the wharf, and, as plaintiff was ascending a ladder under the hatchway, he was struck and injured by a descending bucket used in unloading; that the buckets were operated by an engineer on the wharf, and a boy was stationed on deck to signal the engineer when to hoist, and to warn the men in the hold when a bucket was descending. *Held,* that the jury were properly instructed that the questions of defendant's negligence and of plaintiff's contributory negligence depended on their finding whether the unloading was completed before the bucket which struck plaintiff was sent down, and whether it was sent down out of time, when plaintiff had a right to assume that no more buckets were coming.

2. SAME—INSTRUCTIONS.

In such case plaintiff's request to charge, which required a verdict for plaintiff on a finding of negligence on the part of defendant, in disregard of the evidence of contributory negligence, was properly refused.

Appeal from circuit court, Erie county.

Action for personal injuries by Alpheus N. Smith against the Pennsylvania Coal Company. From a judgment for defendant entered on a verdict of a jury, and an order denying a motion for a new trial, plaintiff appeals. Affirmed.

Argued before DWIGHT, P. J., and MACOMBER, J.

*S. A. Simons,* for appellant.    *J. G. Milburn,* for respondent.

DWIGHT, P. J. The action was to recover damages for a bodily injury sustained by the plaintiff, and caused, as alleged, by negligence of the defendant. The plaintiff was second mate of a vessel engaged in transporting coal for the defendant from Buffalo to Chicago. The accident occurred at the latter place, where servants of the defendant were engaged in unloading coal from the vessel. This was done by means of buckets and hoisting machinery driven by a steam engine on the wharf alongside of which the vessel was tied. The buckets, when filled by men in the hold, were hoisted through two hatchways, one in the main deck, and one in the hurricane deck, and were then run out, by the same machinery, to the dumping place, dumped automatically, run back empty, and lowered again to the hold. The engineer in charge of the hoisting apparatus being unable to see or hear from the men in the hold when a bucket was filled, a boy was stationed at the hatchway on the hurricane deck, whose business it was to signal to the engineer when to hoist. He was also to see to it that the descending bucket cleared the combing of the hatchway, and, if he saw any of the men in the hold standing under the bucket, as it went down, he was accustomed to call out to them to stand from under. At the time of the accident the unloading of the coal was nearly completed, and the plaintiff was in the hold with some deck hands for the purpose of sweeping up the floor. At this time the captain gave the order to "stand by the lines" preparatory to unloosing the vessel from the wharf, and the plaintiff and his men started for the main deck in response to the order. There was a ladder at each side of the hatchway, which extended across the main deck. The buckets were lowered at the side next the wharf, and most of the men went up the ladder at the other side, but the plaintiff, apparently assuming that no more buckets were to be lowered, started to go up the ladder, which was nearly under the fall, when he was struck by a descending bucket, and thrown back to the floor of the hold, sustaining the injury complained of.

The principal question of fact submitted to the jury was whether the unloading of the coal was completed before this bucket was sent down, and whether it was sent down out of time, and when the plaintiff had a right to assume that no more buckets were coming, and that it was safe for him to

go up the ladder under the fall; and the jury was instructed that upon-that question might depend their finding in respect to negligence on the part of the plaintiff as well as of the defendant. The charge was, in our judgment, very liberal to the plaintiff, and no exception was taken by him to any portion of it, as at first delivered. But at its close his counsel made a request in the following language: "I ask your honor to charge the jury that, if they find the defendant had habitually kept a person at the hatchway on the hurricane deck, leading to the hold in which the plaintiff was injured, charged with the duty of giving warning when the bucket was to be lowered into the hold, and which person had habitually performed that duty, and at the time of the injury that person was absent from his post of duty, and failed to give such warning when the bucket which struck the plaintiff was lowered upon him, and that the injury to the plaintiff would not have happened if the usual warning had been given, then their verdict must be for the plaintiff. *The Court.* I do not think that the evidence in this case would warrant the jury finding that the boy was absent from his place of duty. *The Counsel.* I will take an exception to your refusal to charge and to the charge as made. *The Court.* The only evidence that tends to show at all that the boy was not there is the evidence of the plaintiff, as I remember it, and he said simply that as he looked up he did not see him. The boy swears that he was there, and the engineer swears that he was there, and I do not remember that any one else speaks upon the subject. Now, to have the jury find that the boy was not there simply because the plaintiff did not happen to see him, when both of these witnesses swear that he was there, I think they would not be justified in coming to that conclusion. *The Counsel.* I will except to the refusal to charge in the specific language requested and to the charge as given." The exception cannot avail the plaintiff. The proposition of law embraced in the request was too absolute, even if the facts were to be found in accordance with the hypothesis. That proposition excluded from the consideration of the jury the issue of negligence on the part of the plaintiff, which was con-·cededly in the case, and required a verdict in his favor upon a finding only of negligence on the part of the defendant. It would have been error to charge as requested. The remark of the court to the effect that the hypothesis of fact was not warranted by the evidence was, we think, entirely justified, and that a finding by the jury that the boy was not at his post would have been contrary to evidence. It is true that one witness besides the plaintiff testified that he did not see the boy at the hatchway at the time the plaintiff was hurt, but he does not testify that he was in a position to see whether he was there or not, nor whether he looked to see; his testimony on this point was entirely immaterial. But even if it had been otherwise, and the court, by inadvert-·ence, had failed to mention it, the remedy would have been by calling the attention of the court to the testimony, and not by an exception to the charge. There is no other exception in the case, and there can be no doubt that the evidence fully sustains the verdict upon the questions submitted to the jury. The judgment and order appealed from must be affirmed. So ordered.